IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON P. THOMAS, | )<br>)<br>) |
| Petitioner | ) Case No. 1:18-cv-00307<br>) |
| vs. | )<br>) RICHARD A. LANZILLO |
| TAMMY FERGUSON,<br>THE ATTORNEY GENERAL OF THE<br>STATE OF PENNSYLVANIA, and<br>DISTRICT ATTORNEY OF<br>ERIE COUNTY | ) UNITED STATES MAGISTRATE JUDGE<br>)<br>) MEMORANDUM OPINION AND<br>) ORDER ON PETITION FOR WRIT OF<br>) HABEAS CORPUS (ECF No. 6) |
| Respondents | ) |

MEMORANDUM OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus filed by Jason P. Thomas pursuant to 28 U.S.C. § 2254. ECF No. 6. For the reasons that follow, the petition will be denied.[1]

I.  Background

A review of the record and the criminal docket sheet for Thomas's underlying conviction in *Commonwealth v. Thomas*, No. CP-25-CR-0001973-2014 (Erie Cnty. Com. Pl.),[2] reveals the following relevant facts.

On March 5, 2015, Thomas was convicted by a jury of first-degree murder, aggravated assault, robbery, two counts of receiving stolen property, two counts of possessing an instrument of crime, three counts of recklessly endangering another person, and theft by unlawful taking. On April 22, 2015, Thomas

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge.

[2] The criminal docket is available at https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-25-CR-0001973-2014&dnh=WzthTu2ZrrS%2bZdGpocp41A%3d%3d (last visited January 5, 2021).

1

was sentenced to life without parole plus a consecutive sentence of 7½ to 15 years' imprisonment. He did not file post-sentence motions.

On May 15, 2015, Thomas filed a direct appeal. The Pennsylvania Superior Court affirmed the judgment of sentence on March 11, 2016. On April 1, 2016, Thomas filed a petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 et seq. The petition was dismissed on November 18, 2016. Thomas appealed the order dismissing the petition on December 19, 2016. The Pennsylvania Superior Court affirmed the order on October 17, 2017.

Thomas filed the instant petition for a writ of habeas corpus on October 2, 2018. ECF No. 1-1. Respondents filed a response to the petition on July 15, 2019. ECF No. 21. Thomas filed a traverse on March 23, 2020. ECF No. 34. Thomas also filed a "Motion Stating Facts And PA.R.A.P. That's Mandatory Supporting Petitioner's Claims On Habeas Corpus Filed On 10-05-2018," on December 11, 2020, ECF No. 35, which offers additional support for the petition, but does not seek relief other than that sought in the petition.

II.   Analysis

   A.   AEDPA Statute of Limitations

Respondents argue, *inter alia*, that the petition should be dismissed as untimely. ECF No. 21 at 3-4. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and provides:

> (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>    (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B)   the date on which the impediment to filing an application created by State action in violation of

2

>> the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). *Caldwell v. Mahally, et al.*, 2019 WL 5741706, *5 (W.D. Pa. Nov. 5, 2019). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). *Id.* Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. *Id.*

    1.  Trigger Date Calculation

Thomas sets forth five grounds for relief in his petition, all of which are based on the ineffective assistance of his trial counsel. ECF No. 6-1. These claims do not implicate newly enunciated constitutional rights or facts that were discovered later. Furthermore, there were no state-created impediments that prevented Thomas from raising these claims sooner. Consequently, the "trigger date"

for these claims is the date on which his judgment of sentence became final. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

Because Thomas did not file post-sentence motions, his judgment of sentence became final on or about April 11, 2016, at the expiration of the time for filing with the Pennsylvania Supreme Court a petition for allowance of appeal from the Pennsylvania Superior Court's affirmance of the judgment of sentence. Pa.R.A.P. 1113(a). The one-year limitations period for filing a habeas corpus petition began to run on that date. 28 U.S.C. § 2244(d)(1)(A). Accordingly, Thomas had to file any federal habeas petition by April 11, 2017. Because the instant habeas petition was filed on October 2, 2018, his petition is statutorily time-barred. Given this deficiency, the Court must determine whether he can take advantage of the statutory tolling provision set out in Section 2244(d)(2).

2. Statutory Tolling

Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding.

Thomas filed his PCRA petition on April 1, 2016, before one-year limitations period had begun to run. That PCRA petition was "properly filed," thus, the proceedings thereupon tolled the statute of limitations until they were concluded on October 17, 2017, when the Pennsylvania Superior Court affirmed the dismissal of the PCRA petition. The statute of limitations started to run the following day, October 18, 2017. Pursuant to the prisoner mailbox rule, *see Houston v. Lack*, 487 U.S. 266 (1988), Thomas filed the instant petition on October 2, 2018, 349 days later. Thus, his petition is timely.

4

B.   Exhaustion

Respondents next argue that all of Thomas's grounds for relief are unexhausted. ECF No. 21 at 4-5.

As this Court has explained:

> As a general matter, a federal district court may not consider the merits of a habeas petition unless the petitioner has "exhausted the remedies available" in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). A petitioner satisfies the exhaustion requirement "only if [the petitioner] can show that [he or she] fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). The purpose of the exhaustion requirement is to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts ... by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.
>
> To "fairly present" a claim for exhaustion purposes, the petitioner must advance the claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *O'Sullivan*, 526 U.S. at 845. Either way, the petitioner must present his federal constitutional claims "to each level of the state courts empowered to hear those claims." *Id.* at 847 ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). "Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied." *Stoss v. Estock*, 2019 U.S. Dist. LEXIS 83240, 2019 WL 2160464, at *3 (M.D. Pa. May 17, 2019) (citing *Castille v. Peoples*, 489 U.S. 346, 350, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989)).

*Dean v. Tice*, 2020 U.S. Dist. LEXIS 96328, at *12-13 (W.D. Pa. June 1, 2020).

Thomas did not raise before the state court any of the claims of trial counsel's ineffectiveness which constitute the grounds of this petition. He bypasses this omission by nominally couching each of the claims as PCRA counsel's ineffectiveness for failure to raise the claims of trial counsel's ineffectiveness in the PCRA petition.

The relevant law is as follows:

5

> The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely upon PCRA counsel's ineffectiveness to overcome the default of a federal habeas claim. *See, e.g., Coleman* [*v. Thompson*], 501 U.S. [722] at 752-54 [1991]; *Davila v. Davis*, 137 S. Ct. 2058, 2062, 198 L. Ed. 2d 603 (2017) ("An attorney error does not qualify as 'cause' to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel. Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default."). In *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court announced a limited, but significant, exception to this rule. Under *Martinez*, a Pennsylvania prisoner may argue that his PCRA counsel "caused" the default of a claim that trial counsel was ineffective. 566 U.S. at 9; *Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). The holding in *Martinez* is limited to defaulted ineffective-assistance-of-trial-counsel claims. *See, e.g., Davila*, 137 S. Ct. at 2062-70. It does not apply to any other type of claim. *Id.*
>
> Under *Martinez*, in order to avoid the default of an ineffective-assistance-of-trial-counsel claim, Petitioner must establish two things: (1) the ineffective-assistance-of-trial-counsel claim is "substantial"; and (2) [PCRA counsel] was ineffective within the meaning of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]. *Martinez*, 566 U.S. at 14; *Workman*, 915 F.3d at 937. ...
>
> The Court of Appeals has explained that an ineffective-assistance-of-trial-counsel claim is "substantial" if it has "some merit." *Workman*, 915 F.3d at 938. The evaluation of whether a claim has "some merit" is the same one that a federal court undertakes when it considers whether to grant a certificate of appealability. *Id.* Thus, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000); *Workman*, 915 F.3d a 938 (a petitioner "must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should be resolved in a different manner of that the issues presented were adequate to deserve encouragement to proceed further.'"), quoting *Martinez*, 566 U.S. at 14, which cited *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

*Hensley v. Cappoza*, 2019 WL 5457396 at *6 (W.D. Pa. Oct. 24, 2019).

The *Strickland* test is explained as follows:

Ineffective assistance of counsel claims are governed by the familiar standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance under *Strickland*, the Petitioner has the burden of establishing that his trial "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Importantly, the Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all

6

significant decisions in the exercise of reasonable professional judgment[.]'" *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quoting *Strickland*, 466 U.S. at 690). *See also Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689).

The Supreme Court also instructed:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.

*Richter*, 562 U.S. at 105.

*Strickland* also requires that the Petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." *Strickland*, 466 U.S. at 694. As the United States Court of Appeals for the Third Circuit explained:

> [The Petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' - rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Richter*], 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." *Id.* at 787-88 (citing *Strickland*, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. *Id.*

*Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011).

*Howard v. Delbalso*, 2017 WL 3446826, at *3 (W.D. Pa. Aug. 10, 2017) (footnote omitted).

The Court will review the grounds under the law set forth above to evaluate whether Thomas can avoid procedural default of his claims of trial counsel's ineffectiveness.

7

C.   Ground One: Ineffective assistance of trial counsel for failure to raise double jeopardy

Thomas first asserts that his trial counsel was ineffective for failing to assert double jeopardy when Thomas was tried and convicted by a second jury after a first one had been empaneled and sworn in. ECF No. 6-1 at 2-3. Thomas alleges:

> On January 20, 2015, a jury was selected, empaneled and sworn in and Petitioner's trial was to start on January 21, 2015. However, on January 21, 2015, attorney John Moore (counsel for the Petitioner) suffered a medical emergency. Instead of consulting with the Petitioner and motioning the court, attorney Moore contacted attorney Jack Daneri (the Commonwealth's attorney) indicating he could not proceed to trial as scheduled. Subsequently, attorney Daneri filed a motion to continue this case, and without objection or consultation with counsel, the panel selected and sworn in on January 20, 2015, was dismissed.

*Id.* at 2.

Relying on *Love v. Morton*, 112 F.3d 131 (3d Cir. 1997), Thomas argues that his trial counsel was ineffective for failing to object to the empaneling of a second jury on the grounds that his procedural due process and Fifth Amendment rights to be free of double jeopardy were violated. ECF No. 7 at 7-9. Thomas's argument fails for multiple reasons. First, his assertion that the first jury was sworn in on January 20, 2015, is unsupported by the record. Thomas cites only to a Motion to Continue Trial filed on February 3, 2015 (concerning an unrelated subsequent delay of trial), in which District Attorney Daneri described the procedural history of the case and avers that, following Attorney Moore's medical emergency on January 21, 2015, "the panel of jurors (not yet sworn in) was dismissed." ECF No. 7-1 ¶ 10. If the jury was not sworn in, jeopardy did not attach. *Crist v. Bretz*, 437 U.S. 28, 36 (1978).

However, even assuming *arguendo* that jeopardy had attached on January 20, 2015, the claim still fails. As the United States Court of Appeals for the Third Circuit set forth in *Love*:

> Our jurisprudence does not prohibit retrial following termination if a defendant consents or waives the right to assert double jeopardy, or when there is manifest necessity to terminate the first trial. *Oregon v. Kennedy*, 456 U.S. 667, 673, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982); *Arizona v. Washington*, 434 U.S. 497, 54 L.

8

Ed. 2d 717, 98 S. Ct. 824 (1978); *United States v. Dinitz*, 424 U.S. 600, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976); *Illinois v. Somerville*, 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066 (1973).

*Love*, 112 F.3d at 136-37.

In *Love*, the trial judge abruptly declared a mistrial due to the sudden death of his mother-in-law during trial. The trial judge entertained no input from counsel in the decision. The Court of Appeals found that the mistrial had not been a manifest necessity and, further, that defense counsel had not given express or implied consent to the mistrial, thus double jeopardy prohibited Love's prosecution at a subsequent trial.

Thomas's recitation of the relevant events reveals that his trial counsel relayed to the district attorney his inability to proceed on the morning of trial. Trial counsel's actions show, at a minimum, implied consent to the continuation of trial to a later date. Thus, the facts are distinguishable from those in *Love*. There was no basis upon which Thomas's trial counsel could have raised a claim of double jeopardy when he consented to the continuation of the trial. Trial counsel could not have been ineffective for failing to make a baseless claim; thus, the claim of trial counsel's ineffectiveness has no merit. Because Thomas has not established that the ineffective-assistance-of-trial-counsel claim is substantial, he cannot avoid procedural default of this claim.

> D. Ground Two: Ineffective assistance of trial counsel for failure to move to suppress statements

Thomas next argues that trial counsel should have moved to suppress the statements that Thomas made when he was detained but not provided with *Miranda* warnings. ECF No. 6-1 at 3-4. Specifically, he asserts:

> On April 8, 2014, the Erie Police Department ("EPD") received 911 calls from the Petitioner indicating that he had been robbed and shot and needed help. Subsequently, EPD arrived at the scene and upon arrival they noticed that the

9

>Petitioner was shot. Thereafter, Petitioner was transported to UPMC Hamot by ambulance and was accompanied by Detective Jason Triana ("Det. Triana"). While being transported to Hamot hospital, and without providing a *Miranda* warning, Det. Triana began to interview the Petitioner.
>
>Once Petitioner arrived at Hamot hospital, he was immediately rushed into surgery due [to] the nature of his wounds. Following the surgery, however, the Petitioner was cuffed to the bed. At this time, the Petitioner was interviewed by Detective Oborski ("Det. Oborski") and Kemling ("Det. Kemling["]). Despite being cuffed to the bed, the Petitioner was not provided a *Miranda* warning.
>
>The statements provided by the Petitioner to the Detectives [were] material as such was used to secure the Affidavit of Probable Cause in initiating Petitioner's arrest. Additionally, the illegally obtained information was admitted as substantive evidence against the Petitioner at his trial. See, (N.T. 3/2/15 at 126-189).

ECF No. 6-1 at 3-4.

A pre-trial motion to suppress these relevant statements would not have had any effect on Thomas's arrest. To the extent that Thomas is asserting that he was prejudiced by trial counsel's failure to prevent these statements from being admitted at trial, he has failed to do so.

At this point, a review of the evidence adduced at trial, as summarized by the Pennsylvania Superior Court, will be enlightening. In reviewing the sufficiency of the evidence supporting the verdict in Thomas's case, the Superior Court found as follows:

>On April 8, 2014, [Thomas] shot and stabbed Stephon Bibbs ("Bibbs"), who lived in the apartment above [Thomas], on the landing of their building's steps. [Thomas] then stole Bibbs' wallet and clothing. The gun used in the murder was stolen and two other individuals were inside the residence when the murder occurred.
>
>. . .
>
>In essence, [Thomas] argues that he was a victim and not the perpetrator of the offense. He argues that two men, one Caucasian and one African-American, shot him and Bibbs. He argues that the gun used in the murder belonged to him until the day before the crime when he illegally sold it.
>
>We conclude that this argument is wholly frivolous. [Thomas] admitted that the gun belonged to him until he allegedly sold it eight hours prior to the murder. Myisha Coles ("Coles"), who was [Thomas's] live-in girlfriend, stated that she did

10

> not see any third-parties at the scene of the shooting or fleeing the shooting. Within one minute of police receiving a 911 call they set up a perimeter around the scene and did not witness any individuals fleeing or any individuals that matched the description of the two alleged perpetrators [Thomas] described.
>
> The forensic evidence was inconsistent with [Thomas's] version of events and consistent the prosecution's version of events. Specifically, Bibbs' bloodstained, empty wallet was found in the duct work of [Thomas's] apartment. Also in [his] duct work were two spent cartridges fired from the murder weapon. Currency with Bibbs' blood was also found in [Thomas's] couch. A portion of the knife used to stab Bibbs[] was found underneath pots and pans in [Thomas's] apartment. [Thomas's] footprint was found in the blood at the crime scene. The footprint was pointed in a direction that was inconsistent with [Thomas's] version of events but was consistent with the Commonwealth's version of events. Bibbs' blood was also found on Bibbs' door - which was inconsistent with [Thomas's] version of events but consistent with the Commonwealth's version of events.
>
> Furthermore, the only evidence supporting [Thomas's] version of events, his own trial testimony, contradicted the four previous statements [Thomas] provided police. Each time [he] spoke to police, or testified at trial, his story changed. The jury reasonably concluded that [Thomas's] continually evolving story proved [he] was fabricating his version of events. Based upon the totality of this circumstantial evidence, the jury reasonably determined that [Thomas] was not the victim of a botched robbery attempt but was instead the murderer.

ECF No. 22-1 at 27-28, 31-32

Even assuming *arguendo* that the statements Thomas gave on the way to the hospital and at the hospital were obtained in violation of *Miranda*, their admission at trial was not necessarily improper. *See Harris v. New York*, 401 U.S. 222 (1971) (holding that a defendant who takes the stand may be impeached by his prior statements even if those statements were obtained in violation of only the prophylactic *Miranda* rules). Further, even assuming that the admission of these statements was improper, prejudice from their admission does not necessarily follow. Thomas must still meet his burden to show such prejudice. He makes no effort to do so.

Respondents correctly point out that Thomas made multiple statements to the police in addition to those with which he takes issue. ECF No. 21 at 6-7. On one occasion, Thomas voluntarily presented himself to the Erie Police Department and said, "I'm here to give my formal statement," and then

11

proceeded to talk to the police for approximately an hour and 40 minutes. ECF No. 22-4 at 154-55. Thomas attaches no significance to the admission of the statements given on the day of the shooting versus the admission of his later statements. He further fails to attach any significance to the statements with regard to the other evidence admitted at trial. In short, Thomas does not set forth any basis upon which this Court can find that, but for trial counsel's failure to prevent the admission of the statements, that there is a reasonable probability that the result of the trial would have been different. Thus, he has failed to meet his burden under *Strickland* and has not established that the ineffective-assistance-of-trial-counsel claim is substantial. Accordingly, he cannot avoid procedural default of this claim.

    E.    Ground Three: Ineffective assistance of trial counsel for failure to move to suppress cell phone and computer evidence

Thomas next argues that trial counsel should have moved to suppress evidence obtained from his cell phone and computer without a warrant. ECF No. 6-1 at 4-5. Specifically, he asserts:

> At 1600 on April 8, 2014, Erie Police Department secured a warrant to search the residence of the Petitioner located in Erie Pennsylvania. Due to the fact Petitioner was transported to the hospital for his gunshot wound, he was unable to consent to the search nor was [he] present when the search occurred. However, Myisha Coles ("Coles") (Petitioner's girlfriend) also resided at this location and prior to executing the search, Erie Police Officers secured her consent. In the course of the search, Erie Police Officers were able to secure a Laptop Computer and a Sanyo Cell phone, all belonging to the Petitioner. Prior to securing a warrant to a search of Petitioner's password-protected computer and phone, the Erie Police Department obtained evidence from these items which was presented at Petitioner's trial.

*Id.* at 4 (citations omitted).

Respondents assert that the Commonwealth did not present any such evidence at trial. ECF No. 21 at 7. In his traverse, Thomas points to the Commonwealth's examination of Myisha Coles in which she was questioned about a video that she had watched on Thomas's Facebook page. ECF No. 34 at 8. Indeed, at trial, the Commonwealth asked Myisha Coles if she had "liked" a video Thomas posted to his Facebook page in which a gun was pictured. ECF No. 22-5 at 40-41. The video was shown to the jury and admitted as evidence. *Id.* at 40, 158. Thomas argues that, "Petitioner's being seen on a video with a

12

gun and drug use, the general criminal proclivity was highly prejudicial as such stigmatize[d] Petitioner for behavior connected to the charges for which he was on trial...." ECF No. 34 at 9. Respondents argue that if any evidence from the contents of the computer and/or cell phone was admitted at trial, it was "far outweighed by the surrounding incriminating evidence of record." ECF No. 21 at 7. Respondents are correct.

Assuming *arguendo* that the Facebook video was obtained from Thomas's devices without a warrant and was inadmissible for this reason, a depiction of Thomas with a gun (and perhaps drug use, although drug use is not discussed in the trial transcript) could not have been highly prejudicial evidence in light of Thomas's own testimony at trial. Among other topics, Thomas testified extensively about his habit of smoking marijuana with the shooting victim, describing their relationship as follows:

> Me and Stephon, we was cool, you know. He was my -- I met him and everything. We talked. We smoke weed, you know. And I was -- that's one thing me and him always had in common, you know. I let Stephon know, you know, if you got a blunt, I got you, you know. I was always had marijuana. Got this thing I did, you know, like I -- and that's something that we always did. We always smoked a blunt and play chess.

ECF No. 22-5 at 49.

Thomas also testified about a .45 Ruger handgun that he sold the day before the shooting. *Id.* at 55-59. Thomas's bald assertion of prejudice stemming from a video of him engaged in the same behavior about which he testified is insufficient to sustain his burden under *Strickland*. As such, Thomas has not established that the ineffective-assistance-of-trial-counsel claim is substantial. Accordingly, he cannot avoid procedural default of this claim.

    F.    Ground Four: Ineffective assistance of trial counsel for failure to request jury instruction

Thomas next asserts that his trial counsel was ineffective for failing to request that the jury be instructed that, in order to find Thomas guilty of second-degree murder, "it had to be established that the killing had been in furtherance of the underlying robbery." ECF No. 6-1 at 5. Thomas argues that, "In

13

failing to insure that the jury understood the charges against the Petitioner, trial counsel exposed Petitioner to the danger of being convicted for a crime that the jury did not unanimously agree and had been proven beyond reasonable doubt." ECF No. 7 at 17-18.

In support of this argument, Thomas cites to *Simmons v. Love*, 1996 U.S. App. LEXIS 34786 (3d Cir. 1995). In *Simmons*, the United States Court of Appeals for the Third Circuit held that due process requires that a defendant not be convicted of a crime unless the jury is first informed of the legal definition of that crime and the facts the prosecution must prove. The Court of Appeals found that there was a reasonable probability that the defendant, who was convicted of second-degree murder, would not have been so convicted if the jury had been properly informed of the elements of that crime.

This case is easily distinguishable from *Simmons* because Thomas was not convicted of second-degree murder. Thomas was convicted of first-degree murder and he raises no confusion as to the jury's understanding of that crime. Thus, even assuming *arguendo* that the trial court did not properly instruct the jurors as to the elements of second-degree murder, the prejudice that resulted in *Simmons* did not occur in this case.

Again, Thomas has failed to sustain his burden under *Strickland*, failed to establish that the ineffective-assistance-of-trial-counsel claim is substantial, and failed to avoid procedural default of this claim.

      G.      Ground Five: Ineffective assistance of trial counsel for failure to investigate and call witnesses

Finally, Thomas asserts that trial counsel was ineffective for failing to investigate and call known and available witnesses to testify at trial on Thomas's behalf. ECF No. 6-1 at 7. Although Thomas refers to "witnesses," he identifies only one:

> On this matter, Petitioner points to a potential witness, Victoria Webber ("Webber") who was in residence at 1253 East 27th Street; directly next door to where the crime occurred. In an article published by the Times News following the murder, Webber stated, "there was a lot of different men coming in and out of the upstairs apartment"

14

and "it looked fishy to [her]." This statement by Ms. Webber in response to questions regarding the shooting, was entirely consistent with Petitioner's claim that other parties were responsible for the crime. As such, Ms. Webber should have been investigated by Petitioner's counsel as a potential source of evidence favorable to Petitioner's case.

*Id.* (citation to exhibit omitted).

The article in question states as follows:

Weber, 67, said Bibbs had been a resident in the duplex for about six months. "There were a lot of different men coming in and out of the upstairs apartment," Weber said Tuesday night, "They'd come for about 15 minutes and then leave. It looked fishy to me."

ECF No. 6-5 at 2.

Respondents argue that Thomas has failed to assert how Ms. Webber's testimony would have been helpful to his defense, particularly in light of the "overwhelming evidence" against him. ECF No. 21 at 7. That is correct.

Again, even assuming *arguendo* that this witness was available and willing to testify at trial, and that trial counsel knew or should have known of her existence, Thomas's claim of ineffectiveness fails on the prejudice prong of *Strickland*. The absence of Ms. Webber's testimony, not about any event or person she observed on the day of the shooting, but about her general suspicions concerning the activity in the victim's apartment during the six months prior to his death, could hardly be so prejudicial that it denied Thomas a fair trial. The nature of Ms. Webber's purported testimony begs the question of whether it would have been admissible at all given its, at best, minimal relevance. In any event, Thomas has again failed to sustain his burden under *Strickland*, failed to establish that the ineffective-assistance-of-trial-counsel claim is substantial, and failed to avoid procedural default of this claim.

III.   Conclusion

For the foregoing reasons, the instant petition is without merit. The petition will be denied.

IV.   Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Thomas's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability.

An appropriate Order follows.

ORDER

AND NOW, this 13th day of January, 2021, for the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, IT IS HEREBY ORDERED that Petitioner Jason P. Thomas's petition for a writ of habeas corpus is DENIED with prejudice and a certificate of appealability is DENIED. The "Motion Stating Facts" at ECF No. 35, is also DENIED. The Clerk of Court is directed to mark this case CLOSED as of this date.

RICHARD A. LANZILLO
United States Magistrate Judge